Case 6:20-cv-00028 Document 14 Filed on 10/23/20 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
October 23, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| DAVIS SERNA VILLARREAL, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 6:20-CV-28 |
| § | |
| VICTORIA SHERIFF'S DEPARTMENT, § | |
| *et al*, § | |
| § | |
| Defendants. § | |

### MEMORANDUM AND RECOMMENDATION
### TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Davis Serna Villarreal, previously confined at the Victoria County Jail in Victoria, Texas, is appearing *pro se* and *in forma pauperis*. He has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2).

For purposes of screening, Plaintiff has stated: (1) excessive force claims against **Officer Jonathan Torres, Deputy David Parma, Deputy Jason Garcia, and Sgt. Angela Moya** in their individual capacities; and (2) deliberate indifference claims against **Jane Doe Nurse No. 1 and Jane Doe Nurse No. 2** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned further respectfully recommends that: (1) Plaintiff's claims for injunctive relief and for criminal charges to be brought

against prison officials be **DISMISSED**; (2) Plaintiff's § 1983 claims against University of Texas Medical Branch (UTMB) be **DISMISSED** with prejudice as barred by the Eleventh Amendment; (3) Plaintiff's claims against **Officer Torres, Deputy Parma, Deputy Garcia, Sgt. Angela Moya**, **Jane Doe Nurse No. 1, and Jane Doe Nurse No. 2** in their official capacities be **DISMISSED** with prejudice; and (4) Plaintiff's claims against Victoria County be **DISMISSED** with prejudice as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff claims in this lawsuit arise in connection with his previous confinement at the Victoria County Jail as a pretrial detainee. In his original complaint, Plaintiff sues the Victoria Sheriff's Department and the UTMB. (D.E. 1). Plaintiff alleges that excessive force was used after he was taken into custody at the Victoria County Jail, resulting in injury on or about June 6, 2018, and that the nurses on duty at the Jail denied him adequate medical care for his injuries. Plaintiff seeks monetary relief.

At the Court's request, Plaintiff supplemented the complaint with a More Definite Statement of his claims. (D.E. 7). Plaintiff again names the Victoria Sheriff's Department and the UTMB as defendants. He also references unidentified guards and nurses at the Jail as having some involvement in the incidents that form the basis of his

complaint.

On June 30, 2020, the Court ordered the Victoria County Sheriff's Office to submit a *Martinez*[1] report containing "any relevant administrative records from the Victoria County Jail, including any documents about his arrest and intake at the Jail, any grievances plaintiff may have filed regarding the complained of incidents that occurred on or about June 6, 2018, and any medical records of treatment for the injuries he allegedly sustained." (D.E. 8, p. 1). On October 6, 2020, the Victoria County Sheriff's Office submitted its *Martinez* report along with sealed exhibits. (D.E. 12, 13-1).

Plaintiff alleges the following in his Original Complaint (D.E. 1) and More Definite Statement (D.E. 7). Plaintiff suffers from polio. As a result of this condition, Plaintiff had metal placed in his right shoulder and hip. On June 6, 2018, Plaintiff was taken into custody at the Victoria County Jail after being arrested for public intoxication. (D.E. 7, pp. 1, 3). At the time of his arrest, Plaintiff was not on parole or probation. Later that day after being taken into custody, Plaintiff was in his wheelchair after being taken to the drunk tank. He was forced to be in his wheelchair because his leg brace and crutches had been taken away from him. Plaintiff issued no threats or made any threatening moves during his time in the drunk tank.

Two Hispanic officers removed Plaintiff from his wheelchair and took him to the pink room and slammed him to the ground. More officers entered the pink room. While Plaintiff was on the ground, the "big [H]ispanic guard" placed Plaintiff in a choke hold.

---

[1] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *Cay v. Estelle*, 789 F.2d 318, 323 n. 4 (5th Cir. 1986). *See also Cay v. Estelle,* 789 F.2d 318, 323 n. 4 (5th Cir.1986) (Fifth Circuit approved of the use of *Martinez* Reports in order to develop the factual basis of inmate claims).

(D.E. 7, p. 2).  Other officers held Plaintiff face down, and the "big [H]ispanic guard" attempted to handcuff Plaintiff's arms over his head.  Another officer tasered Plaintiff at the same time that Plaintiff's left hand and thumb were being twisted in the wrong direction.  The officers proceeded to lay on top of Plaintiff, who passed out from the choke hold.  When Plaintiff regained consciousness, he was taken to a restraint chair where he remained all day.

Plaintiff did not file a grievance at the Victoria County Jail following the use of force on June 6, 2018.  No investigations were taken by prison officials at the jail.  In addition, Plaintiff was not charged with a disciplinary case arising out of the incident.

Following the use of force, an officer named Bailey brought Plaintiff directly to the nurses' station at the jail because of Plaintiff's complaints about his shoulder.  Plaintiff needed immediate medical attention because his right shoulder and hip were in intense pain after having been twisted in the wrong direction and because he was forced to sit in restraint chairs.  A blond nurse in her 40s, who was not seeing any other patients, informed Plaintiff that he must submit a written request to see a doctor.  (D.E. 7, pp. 5-6).

Another nurse, who was older with grey hair, was also present at the nurses' station at that time.  Without asking any medical provider, the older nurse proceeded to place Plaintiff in an isolation tank with no handicapped-equipped toilet or shower.  Plaintiff suffered in pain in the isolation tank and had extreme trouble using the restroom.

Plaintiff subsequently contacted his mother and told her about the lack of treatment he was receiving.  After Plaintiff was released on bond, he underwent an MRI in July 2018 which revealed a torn muscle in his shoulder.  Plaintiff received steroid shots

for his injury while in the free world as well as surgery in October 2019 involving a total joint replacement. Plaintiff was hospitalized from October 9, 2019 until October 24, 2019 and subsequently received home therapy treatments. As a result of the use of force on June 6, 2018, Plaintiff is permanently in a wheelchair.

In addition to monetary relief, Plaintiff seek injunctive relief to prevent prison officials at the Victoria County Jail from using excessive force against inmates. (D.E. 7, p. 8). He also asks the Court to bring criminal charges against those prison officials responsible for his constitutional deprivations. (D.E. 7, p. 8).

### III. *Martinez* Report

The Victoria County Sheriff's Office has submitted a *Martinez* report consisting of Plaintiff's relevant Jail File, Incident Forms, and Color Booking Photo. (D.E. 12, 13-1). Plaintiff's Jail File reflects that: (1) on the morning of June 6, 2018, Plaintiff was placed under arrest for public intoxication (D.E. 13-1, p. 13); (2) Plaintiff was booked into the jail at approximately 10:22 a.m. on June 6, 2018 (D.E. 13-1, p. 4); (3) at the time of his booking, Plaintiff had no jewelry on him (D.E. 13-1, p. 7); (4) upon arrival at the jail, Plaintiff exhibited signs of intoxication such as slurred speech and difficulty in communicating in a coherent fashion (D.E. 13-1, p. 45); and (5) after being placed in a holding cell with other inmates, Plaintiff was moved to a "detox cell" after he became confrontational with the inmates in the holding cell (D.E. 13-1, p. 45).

As part of a Confidential Supplement Narrative prepared in connection with the June 6, 2018 Use of Force Report, Sgt. Angela Moya detailed the following events: (1) at approximately 2:00 p.m., Plaintiff began pulling feces out of the toilet and throwing it

onto the detox cell floor and door; (2) Officer Jonathan Torres, Deputy David Parma, Deputy Jason Garcia, and Sgt. Moya gathered outside the detox cell to prepare to enter; (3) led by Officer Torres who carried a shield, officers including Sgt. Moya entered the detox cell to escort Plaintiff out of the cell; (4) Deputy Parma and Officer Torres removed Plaintiff from his wheelchair and escorted him "to the raised steps on the violent cell"; (5) Deputy Parma and Officer Torres sat Plaintiff onto the steps, maintaining control of both hands and arms; (6) Plaintiff became angry and began to push his arm out of Deputy Parma's grasp; (7) Deputy Parma and Plaintiff began to struggle; (8) Deputy Parma and Officer Torres placed Plaintiff on his stomach while Sgt. Moya pulled Plaintiff's leg straight out; (9) Plaintiff continued to struggle; (10) officers attempted to place Plaintiff's hands behind his back, but Plaintiff refused; (11) in light of Plaintiff's active resistance, Sgt. Moya removed the taser from her holster and placed it on Plaintiff's lower back; (12) Plaintiff refused Sgt. Moya's verbal commands to place his hands behind his back; (13) Sgt. Moya then tasered Plaintiff briefly; (14) Plaintiff complied allowing the officers to handcuff him; and (14) officers escorted Plaintiff out of the "Violent cell" and placed Plaintiff in a restraint chair without incident. (D.E. 13-1, pp. 45-46).

No medical records arising from the June 6, 2018 Use of Force were included as part of the *Martinez* report.

IV. **LEGAL STANDARD**

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id*.; *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

A *Martinez* report is a "tool" to be used to further develop the factual basis of an *in forma pauperis* or prisoner complaint in order to determine whether *sua sponte* dismissal is appropriate. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam). For instance, "[a] court may base a dismissal under [§ 1915A or] … § 1915(e) on medical or other prison records if they are adequately identified and authenticated, such as those included in a *Martinez* report, and medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs." *Ruiz v. Mercado*, No. M-14-921, 2016 WL 1166040, at *2 (S.D. Tex. Feb. 10, 2016) (internal quotations and citation omitted). However, information provided through "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color

of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

V.  **DISCUSSION**

   A.  **Certain Claims for Relief**

Plaintiff seeks injunctive relief in the form of preventing prison officials at the Victoria County Jail from using excessive force against inmates. Claims for injunctive relief based on the conditions of confinement, however, are rendered moot upon prisoner's release from custody or transfer to another facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). *See also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (requests for injunctive and declaratory relief become moot when inmate is transferred to another facility). Furthermore, the possibility of Plaintiff's return to the Victoria County Jail is much too speculative to warrant relief. *Smith*, 281 F. App'x at 282. Because Plaintiff is no longer incarcerated at the Victoria County Jail, it is respectfully recommended that his claims for injunctive relief be dismissed.

Plaintiff also asks this Court to bring criminal charges against those prison officials responsible for his constitutional deprivations. Prisoners, however, have no constitutional right to compel the criminal prosecution of someone else. *Hicks v. Bingham*, No. 6:18cv308, 2018 WL 6238003, at *3 (E.D. Tex. Sept. 21, 2018) (citing *Oliver v. Collins*, 914 F.2d 56 (5th Cir. 1991)). Private citizens lack any justiciably cognizable interest in prosecuting individuals. *Linda R.S. v. Richard D.*, 410 U.S. 614,

619 (1973). Thus, an individual cannot seek criminal prosecution even if he or she was the victim of a criminal offense committed by another. *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988). Because Plaintiff cannot pursue criminal charges being brought against prison officials from the Victoria County Jail, it is respectfully recommended that his claims seeking such charges be dismissed.

### B. Eleventh Amendment

Plaintiff has named the UTMB as one of the defendants in this case.[2] The Eleventh Amendment bars suit against state entities such as the UTMB regardless of whether money damages or injunctive relief is sought under § 1983. *See Aguilar v. Texas Dept. of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Accordingly, it is respectfully recommended that Plaintiff's § 1983 claims against UTMB be dismissed with prejudice as barred by the Eleventh Amendment.

### C. Excessive Force

Plaintiff claims that excessive force was used against him on June 6, 2018. The Fourteenth Amendment protects a pretrial detainee from "the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). In this context, punishment can consist of actions that are: (a) "taken with an expressed intent to punish" or (b) "not rationally related to a legitimate nonpunitive governmental purpose" or "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398

---

[2] Information provided as part of the *Martinez* report reflect that the Victoria County Sheriff's Office utilized the UTMB to provide medical services for its inmates. (D.E. 12, p. 6).

Case 6:20-cv-00028   Document 14   Filed on 10/23/20 in TXSD   Page 11 of 19

(2015).

To prove the use of excessive force, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* Objective reasonableness turns on the facts and circumstances of a particular case and must be determined according to the perspective of a reasonable officer at the time of the use of force. *Id.* at 397. Relevant considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40. The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

Plaintiff alleges in his More Definite Statement that: (1) on June 14, 2018, two Hispanic officers removed Plaintiff from his wheelchair and took him to the pink room and slammed him to the ground; (2) while Plaintiff was on the ground, the "big [H]ispanic guard" placed Plaintiff in a choke hold; (3) other unidentified officers held Plaintiff face down, and the big Hispanic officer attempted to handcuff Plaintiff's arms over his head; (4) another officer tasered Plaintiff at the same time that Plaintiff's left

hand and thumb were being twisted in the wrong direction; and (5) the officers proceeded to lay on top of Plaintiff, who passed out from the choke hold. (D.E. 7, pp. 1-2). Plaintiff's allegations further indicate that he suffered injuries from the use of force that later required an MRI, surgery to repair a torn muscle in his arm, and home therapies.

Plaintiff, however, was unable to identify the names of any of the officers who allegedly used force against him on June 6, 2018. Records submitted as part of the *Martinez* report reflect that Officer Torres, Deputy Parma, Deputy Garcia, and Sgt. Moya were the officers responsible for restraining Plaintiff and using force against him. When accepting Plaintiff's allegations as true, they suggest that the force used against him was not objectively reasonable and that Plaintiff suffered more than a *de minimis* injury as a result of the use of force. Based on the information contained in the *Martinez* report identifying the officers involved, it is respectfully recommended that Plaintiff's excessive force claims against Officer Torres, Deputy Parma, Deputy Garcia, and Sgt. Moya[3] in their individual capacities be retained.

### D.  Deliberate Indifference

Plaintiff alleges suggest that two unidentified nurses acted with deliberate indifference to his health by failing to provide him with adequate medical attention following the use of force on June 6, 2018. While the Eighth Amendment ensures the safety and health of convicted prisoners, due process under the Fourteenth Amendment protects pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)

---

[3] In a separate order, the undersigned will add Officer Torres, Deputy Parma, Deputy Garcia, and Sgt. Moya as defendants in this case.

(en banc). Nevertheless, "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (*citing Hare*, 74 F.3d at 634-44).

A pretrial detainee's Fourteenth Amendment rights include the right to medical care. *See Sanchez v. Young County., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017).  Because the standard is essentially the same for both pretrial detainees and postconviction prisoners, cases applying the Eighth Amendment remain relevant to the Court's analysis.

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety.  *Farmer*, 511 U.S. at 834.  In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm."  *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the  [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed."

*Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter*, 467 F.3d at 464 (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

Plaintiff alleges that: (1) he was brought to the nurses' station at the jail after the June 6, 2018 use of force where he complained about his shoulder; (2) Plaintiff required immediate medical attention as his shoulder and hip were in intense pain because his shoulder was twisted in the wrong direction and because he was forced to sit in restraint

chairs; (3) a blond nurse in her 40s did not treat Plaintiff and instead informed him that he must submit a written request to see a doctor; (4) an older nurse with grey hair, who also was present at the nurses' station at that time, placed Plaintiff in an isolation tank with no handicapped-equipped toilet or shower; (5) Plaintiff suffered in pain in the isolation tank and had extreme trouble using the restroom; (6) after Plaintiff was released on bond, an MRI revealed a torn muscle in Plaintiff's shoulder which required surgery as well as home therapies; and (7) as a result of the use of force on June 6, 2018, Plaintiff is permanently in a wheelchair.

Accepting his allegations as true, Plaintiff's allegations indicate that he may have suffered substantial harm as a result of the denial of adequate treatment by the two nurses who were present at the nurses' station on June 6, 2018.  Taken as true, Plaintiff has stated deliberate indifference claims against both nurses.  None of the records submitted as part of the *Martinez* report provide any information as to the identity of these two nurses.  Nevertheless, the undersigned recommends retaining Plaintiff's deliberate indifference against these nurses in their individual capacities, who are identified in the meantime as Jane Doe Nurse No. 1 and Jane Doe Nurse No. 2.[4]

### E.  Official Capacity Claims and Municipal Liability

#### (1)  *Victoria Sheriff's Department*

Plaintiff names the Victoria Sheriff's Department as a defendant in this case. However, this defendant is not an entity capable of being sued.  *Rogers v. Nueces County*

---

[4] In a separate order, the undersigned will add Jane Doe Nurse No. 1 and Jane Doe Nurse No. 2 as defendants in this case.

*Jail*, No. C-07-410, 2007 WL 4367814, at *4 (S.D. Tex. Dec. 13, 2007) (citing *Darby v. Pasadena Police Dep't,* 939 F.2d 311 (5th Cir. 1991)). Instead, the proper party would be Victoria County. *See Rogers*, 2007 WL 4367814, at *4. In a separate Order, the undersigned will substitute Victoria County in place of the Victoria Sheriff's Department as a party defendant in this case.

### (2) Claims against the Municipality and Individual Victoria County Defendants in their Official Capacities

As discussed above, the undersigned recommends retaining Plaintiff's: (1) excessive force claims against Officer Torres, Deputy Parma, Deputy Garcia, and Sgt. Moya in their individual capacities; and (2) deliberate indifference claims against Jane Doe Nurse No, 1 and Jane Doe Nurse No. 2 in their individual capacities. To the extent Plaintiff seeks to sue these officials in their official capacities, such official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations and citation omitted). Plaintiff's lawsuit against these individuals in their official capacities is effectively a suit against Victoria County. *See Will*, 491 U.S. at 71; *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 828 (S.D. Tex. 2012). Accordingly, it is respectfully recommended that Plaintiff's claims against the officers and nurses identified above in their official capacities be dismissed with prejudice.

In order to state that Victoria County is liable for any constitutional violations based on Plaintiff's allegations, Plaintiff must state that any constitutional deprivations were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-

maker; (3) that was the moving force behind the violation of his constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694 (1978)). Municipal liability cannot be established on the basis of respondeat superior. *Monell*, 436 U.S. at 694. A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

Plaintiff has alleged no facts in this case suggesting that Victoria County had either an official policy or custom that compelled any subordinate prison official to use excessive force against Plaintiff or deny him necessary medical care. Because Plaintiff's allegations are insufficient to state a § 1983 claim for municipal liability, it is respectfully recommended that Plaintiff's claims against Victoria County be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## VI.   RECOMMENDATION

For purposes of § 1915(e)(2)(B), Plaintiff has stated sufficient facts that, if true, state (1) excessive force claims against **Officer Jonathan Torres, Deputy David Parma, Deputy Jason Garcia, and Sgt. Angela Moya** in their individual capacities; and (2) deliberate indifference claims against **Jane Doe Nurse No. 1 and Jane Doe Nurse No. 2** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED**. The undersigned will order service as to these defendants by separate order.

The undersigned further respectfully recommends that: (1) Plaintiff's claims for

injunctive relief and for criminal charges to be brought against certain prison officials be **DISMISSED**; (2) Plaintiff's § 1983 claims against the UTMB be **DISMISSED** with prejudice as barred by the Eleventh Amendment; (3) Plaintiff's claims against **Officer Torres, Deputy Parma, Deputy Garcia, Sgt. Angela Moya**, **Jane Doe Nurse No. 1, and Jane Doe Nurse No. 2** in their official capacities be **DISMISSED** with prejudice; and (4) Plaintiff's claims against Victoria County be **DISMISSED** with prejudice as frivolous and/or for failure to state a claim for relief pursuant to § 1915(e)(2)(B).

Respectfully submitted this 23rd day of October, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).